# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

RAYMOND PAUL CAMARATA,

                          Plaintiff,

      v.                                   6:14-CV-578
                                                (MAD/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

---

JOHN W. DeHAHN, ESQ., for Plaintiff
SIXTINA FERNANDEZ, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On November 14, 2011, plaintiff protectively filed applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, alleging disability beginning November 7, 2011. (Administrative Transcript ("T") at 13, 164-72). The applications were denied initially on March 16, 2011. (T. 13, 68-69). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on December 18, 2012. (T. 32-61). On December 28, 2012, ALJ William M. Manico found plaintiff was not disabled. (T. 13-27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 8, 2014. (T. 1–5).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the

residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision. *Id.* *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

As of the date of the administrative hearing on December 18, 2012, plaintiff was 42 years old. (T. 166). He is married, with no children. (T. 167, 371). Plaintiff attended special education classes in high school, and graduated with a regular diploma. (T. 34, 272). He attended two years at Mohawk Valley Community College and obtained a chef's certificate. (T. 50-51). In 1992, plaintiff enlisted in the United States Army, but was honorably discharged after being diagnosed with schizophreniform disorder[1] after a paranoid episode during basic training. (T. 273).

Plaintiff's longest employment occurred between 2002 and 2010, when he was employed first as a janitor and then as a cook for a group home operated by the House

---

[1] "Like schizophrenia , schizophreniform disorder is a type of psychosis in which a person cannot tell what is real from what is imagined. Although schizophrenia is a lifelong illness, schizophreniform disorder involves symptoms that are present for less than six months. When symptoms persist longer than six months, the diagnosis is typically changed to schizophrenia." http://www.webmd.com/schizophrenia/guide/mental-health-schizophreniform-disorder

of the Good Shepherd.  (T. 39, 241, 256).  He was terminated from this position after calling in sick too often.  (T. 39).  Plaintiff's most recent employment prior to his disability onset date was as a deli worker.  (T. 241).  He left this position after believing that co-workers were talking about him and "targeting" him with inappropriate behavior. (T. 45-46).  After his alleged onset date, plaintiff worked briefly in a bakery before quitting after a dispute with the owner.  (T.  37, 255).

Plaintiff acknowledged that he could generally care for himself, although back problems prevented him from performing some household chores, or he sometimes required assistance from his wife.  (T. 211).  Plaintiff testified that he avoided crowds, such as in grocery stores and shopping malls, but was able to drive himself, pay bills, and handle his own finances.  (T. 47, 214).  When he went shopping, he generally had his wife or mother with him.  (T. 46, 215).  Plaintiff primarily socialized with his wife, parents, and in-laws.  (T. 215).

Plaintiff first received psychiatric treatment while in the military in 1992, and was hospitalized in 1993 for anxiety and depression. (T. 40, 278).   Between 1998 and 2012, plaintiff received intermittent psychiatric treatment, including medication and counseling.  (T. 281-362, 371, 393-418, 446-71).   Plaintiff attributes the gaps in his treatment record, which included breaks of up to two years, to his financial difficulties. (Pl.'s Br. at 27).  In 2011, plaintiff underwent testing in four areas: Intelligence Assessment, Achievement Assessment, Attention Assessment, and Personality Assessment.  (T. 338-43).  Based on his test scores, plaintiff was found to have a full

scale IQ score of 73[2], with a GAF[3] score of 55, and was diagnosed with generalized anxiety disorder, panic disorder, cognitive disorder NOS (auditory processing, auditory working memory), and borderline intellectual functioning. (T. 343-44). In 2012, plaintiff began treatment with Mental Health Connections and was diagnosed with panic disorder without agoraphobia. (T. 365-69). As part of this program, plaintiff received counseling two to four times per month, and was prescribed medication. (T. 407, 424).

Plaintiff also received treatment for alcoholism, and attended counseling and Alcoholics Anonymous meetings on a regular basis. (T. 387). Plaintiff enrolled in residential rehabilitation centers on two separate occasions, but withdrew from the programs after a short period of time. (T.40-42). During his testimony, plaintiff attributed his alcoholism to his anxiety, and used alcohol as a coping mechanism. (T. 42-44).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 15-25). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

---

[2] Plaintiff's verbal score was 80, performance score was 75, and working memory score was 74. (T. 387).

[3] The GAF Scale (DSM IV Axis V) ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness to assist "in tracking the clinical progress of individuals [with psychological problems] in global terms." *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM IV"),* at 32 (4th ed. 2000)). GAF is a 100 point scale, and 41-50 indicates "serious symptoms," 51-60 indicates "moderate symptoms," and 61-70 indicates "some mild symptoms." DSM-IV-TR at 32-34.

## IV.    THE ALJ'S DECISION

After finding that plaintiff met his insured status through December 31, 2015, and that plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 7, 2011, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: depression, anxiety disorder with panic attacks, borderline intellectual functioning, and alcoholism. (T. 15). The ALJ found that although plaintiff had been treated for back pain and was diagnosed with hyperlipidemia and high cholesterol, these conditions were not "severe impairments." (T. 15).

At step three of the disability analysis, the ALJ found that plaintiff did not have a Listed Impairment. (T. 17-18). In making this determination, the ALJ considered whether plaintiff's mental impairments, singly or in combination, met or medically equaled the criteria of Listing 12.02 (organic mental disorders); Listing 12.04 (depressive syndrome); Listing 12.06 (anxiety disorders); and 12.09 (substance abuse disorders). (T. 17). The ALJ found that plaintiff had moderate restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulty with concentration, persistence and pace in the workplace. (*Id.*). The ALJ considered plaintiff's psychiatric hospitalizations in 1992 and 1993, but did not assign either of them any significance in light of the remoteness of these hospitalizations from the onset date of November 7, 2011. (*Id.*).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform the full range of work at all exertional levels, but with certain nonexertional limitations.

7

(T. 19). Specifically, the ALJ concluded that: plaintiff retained the mental RFC to perform unskilled work involving short, simple instructions where interactions with others are routine, superficial, incidental to the work performed, and less than occasional in frequency; plaintiff should not perform fast-paced production work; and plaintiff should not do jobs that involve interacting with the public. (*Id.*).

In making the RFC determination, the ALJ stated that he considered all the plaintiff's symptoms, and the extent that those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-4p and 96-7p." (T. 19). The ALJ also considered opinion evidence in accordance with 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p, and gave "significant weight" to the reports by consultative psychologist Dr. David Mahony and state agency psychologist Dr. D. Mangold. (T. 19). The ALJ gave "little weight" to the mental health evaluations submitted by plaintiff, affording them "some weight" to the extent that they were consistent with plaintiff's documented social and intellectual limitations. (T. 22-24).

After considering the evidence, the ALJ found that plaintiff was not fully credible with respect to the intensity, persistence, and limiting effects of his symptoms. (T. 21). In making the credibility determination, considered the plaintiff's testimony in addition to the medical evidence. (T. 19-24).

At step four, the ALJ also determined that plaintiff's RFC would prevent him from performing his past relevant work as a cook. (T. 25). At step five, the ALJ relied

8

upon the testimony of a vocational expert to conclude that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and determined that plaintiff was not disabled, based upon his age, education, and prior work experience. (T. 26.).

## V.  ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.  The ALJ improperly weighed the medical evidence. (Pl.'s Br. at 16-23) (Dkt. No. 9).

2.  New and material evidence submitted to the Appeals Council mandates remand to the ALJ. (Pl's Br. at 24-25).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 5-13). (Dkt. No. 10). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## DISCUSSION

## VI.  RFC

### A.  Legal Standards

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d

Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

An ALJ may not arbitrarily substitute his/her own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon "adequate findings supported by evidence having rational probative force." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)). A conclusory statement of disability is not binding on the ALJ if that opinion is inconsistent with substantial evidence in the record. *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008) (citing *inter alia Shaw v. Chater*,

10

221 F.3d 126, 131 (2d Cir. 2000)); *Veino*, 312 F.3d at 588. *See* 20 C.F.R. §

404.1527(e)(1) (a statement by a medical source that a claimant is "disabled" does not

mean that the Commissioner will make that determination). The term "disabled" is a

legal not a medical definition. *Id.*

## B.    Application

The ALJ found that plaintiff had the ability to perform work at all exertional

levels, but that due to nonexertional limitations, that plaintiff should not perform fast-

paced production work and should avoid jobs that involve interacting with the public.

(T. 19). The ALJ determined that plaintiff had the RFC to perform unskilled work

involving simple instructions where interactions with others are routine, superficial,

incidental to the work performed, and less than occasional in frequency. (*Id.*).

### 1.  Talerico/Saville Medical Source Statement

Plaintiff argues that, in making the RFC determination, the ALJ failed to give

sufficient weight to the RFC evaluation ("Medical Source Statement") completed by

plaintiff's most recent treating sources at Mental Health Connections - Linda Talerico,

a nurse practitioner, and Donna Saville, a registered nurse. (Pl's Br. at 19-23). Plaintiff

further argues that the ALJ gave too much weight to the opinions of consultative

examiner Dr. Mahony and state agency consultant Dr. Mangold. (Pl's Br. at 19-20).

This court does not agree.[4]

_____

[4] Plaintiff's counsel also points out minor errors in the ALJ decision, which plaintiff
contends raise "serious questions as to the thoroughness of the ALJ's review of the evidence."
These include a miscite of the C.F.R., a reference to a male therapist as "she," and a statement
that plaintiff drove to an examination "on his own" when he was actually accompanied by his
wife. (Pl.'s Br. at 18, 23). Plaintiff also contends that the ALJ incorrectly stated that plaintiff
"lives with his wife" when plaintiff was actually separated from his wife at the time of the

The ALJ gave several reasons for discounting, but not completely disregarding, the RFC evaluations by Talerico and Saville. (T. 22-24). First, the ALJ found that the extreme and marked limitations described in the Talerico/Saville reports were not consistent with plaintiff's own testimony or his documented ability to do multiple tasks, including driving, caring for himself, working for extended periods, and socializing with family. (T. 22). The ALJ also noted that both nurses' findings exceeded their primary area of practice.[5] (*Id.*). Finally, the ALJ noted that Talerico and Saville were not accepted medical sources under the Social Security Regulations. (T. 23).

Despite plaintiff's contention that the ALJ disregarded Talerico/Saville's opinions with a "cursory dismissal" because they were not physicians, the record demonstrates that the ALJ considered the Talerico and Saville reports appropriately under the regulations. (T. 22-24) While neither Talerico nor Saville is an "acceptable medical source" for purposes of "establishing" the existence of an impairment, their opinions may be considered for purposes of showing the severity or the limiting effects of the plaintiff's impairment. 20 C.F.R. § 404.1513(d). The opinions of nurse practitioners and similar medical professionals must be considered by an ALJ because

---

hearing. Because correction of any of these errors would not have changed the outcome of the hearing, this court will consider them harmless. I also note that there is no evidence in the record that plaintiff's separation was ever brought to the ALJ's attention, even though plaintiff mentioned his wife during the hearing. (T. 60).

[5] Plaintiff notes that Nurse Practitioner Talerico has a specialization in psychiatry as part of her New York State license.
http://www.nysed.gov/coms/op001/opsc2a?profcd 40&plicno 401291&namechk TAL
Because the ALJ gave other reasons for discounting the Medical Source Statement primarily the inconsistency with the other medical evidence this court concludes that this error was harmless.

their information may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also* SSR 06-03p, 2006 WL 2329939, at *2.[6]

The record shows that the ALJ gave extensive consideration to the Medical Source Statement prepared by Talerico and Saville. (T. 22-24). The ALJ reviewed plaintiff's testimony, work history, and the other medical evidence (including mental health progress reports prepared by Talerico) to determine the appropriate weight to give the Talerico/Saville Medical Source Statement. (*Id.*). At the end of this analysis, the ALJ found nothing to support the opinion that plaintiff had "extreme limitations" in functioning in a work setting at a consistent pace and "marked limitations" in understanding and remembering instructions, maintaining attention and concentration, and managing stress. He assigned the Talerico/Saville opinion "little weight" but gave it "some weight" to the extent it was consistent with the RFC and the other medical evidence. (T. 24).

The ALJ's conclusion is supported by the record. In addition to the lack of any other medical findings which express concerns about extreme or marked limitations in any functional areas, the conclusions in the November 20, 2012 Medical Source

---

[6] SSR 06-3p states that these "other sources" are important because "with the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled by physicians and psychologists. Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." 2006 WL 2329939, at *3.

Statement are not corroborated by any of the regular progress reports prepared by Talerico and reviewed by the ALJ. (T. 394-418). For example, the earliest report, dated April 6, 2012, described plaintiff as initially emotional and avoiding eye contact; but as the interview progressed the plaintiff's behavior changed and he became more participative. (T. 401). The April 13, 2012 report notes that plaintiff "just got out of work a little while ago and now he is making much more sense regarding his paranoia." (T. 398). On June 29, 2012, Talerico described plaintiff as "calm" and "a different man since I first met him." (T. 394). In the most recent report provided to the ALJ, dated September 17, 2012, Talerico reported that "Today, he looks pretty much the best I have seen him over the past few months. He continued to report some mood swings, but nothing that he has in the past . . . There is no evidence of auditory or visual hallucinations, psychosis, paranoia, or delusions." (T. 407). Plaintiff has offered no explanation for the disparity between improvements described in the April - September 2012 progress reports and the far more negative outlook in the November 2012 Medical Source Statement.

Plaintiff's contention that the ALJ ignored the Medical Source Statement because Talerico and Saville "are not physicians" (Pl's. Br. at 27) is contradicted by the scope of the ALJ's analysis of the Medical Source Statement. (T. 22-24). While he assigned it little weight, the ALJ did not disregard the Talerico/Saville opinion completely. Moreover, the ALJ considered and gave "some weight" to the 2011 evaluations of a different registered nurse practitioner, Michelle Chambrone, and a counselor assistant, Joanne McNary, finding that the moderate limitations described in their report were

consistent with the medical evidence in the record. (T. 24, 336-37). It is clear from the ALJ's decision that the primary factor in affording the Talerico/Saville findings "little weight" was inconsistency with the other medical evidence, rather than any bias against the professional qualifications of non-physicians.

### 2. Mahony/Mangold Opinions

Plaintiff also objects to the "significant weight" assigned to the opinions of consultative examiner Dr. David Mahony and state agency consultant Dr. Mangold. The report of a consultative examiner may serve as substantial evidence upon which the ALJ may base his decision. *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, No. 13-CV–543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (Rep't-Rec.)); *Simmons v. Comm'r of Soc. Sec.*, No. 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039). In addition to the plaintiff's own physicians and other medical sources, the ALJ may also rely upon a "medical advisor" who is a non-examining state agency "medical consultant." *See Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832 at *6-7 (W.D.N.Y. June 10, 2010). This court concludes that the ALJ's analysis of Dr. Mahony and Dr. Mangold's opinion was supported by substantial evidence, and that plaintiff's challenges to the weight assigned those opinions are unpersuasive.

Dr. Mahony's diagnosis of panic disorder without agoraphobia was consistent with prior diagnoses, including that of Nurse Practitioner Talerico (T. 374, 401). In contrast to the Talerico/Saville Medical Source Statement, the ALJ found that

Mahony's conclusions about the severity of that diagnosis were consistent with the other medical evidence. (T. 22). Dr. Mahony opined that plaintiff could follow and understand simple instructions, and perform simple tasks independently. (T. 22, 373). Mahony found that plaintiff had mild difficulty maintaining attention and concentration; maintaining a regular schedule; learning new tasks; performing complex tasks; and making appropriate decisions. (T. 22, 373). Plaintiff also had moderate difficulty relating with others and dealing with stress due to anxiety. (*Id.*).

Plaintiff's primary contention is that the consultative examination was inadequate, thus calling into question the legitimacy of Dr. Mahony's conclusions. (Pl.'s Br. at 25). Plaintiff asserts that Dr. Mahony's consultative exam lasted "for all of 10 minutes - a fact that was brought to the Appeals Council's attention." (*Id.*). Citing 40 C.F.R. § 404.1519(n)(a)(1), plaintiff argues that such a short psychiatric consultative exam is insufficient as a matter of law.

Procedurally, plaintiff's objection to the perceived length of Dr. Mahony's examination is defective, because it was never raised before the ALJ. *Courtney v. Colvin*, No. 06:12-CV-1157 (GLS), 2013 WL 5218455, at *2, FN 4 (N.D.N.Y. Sept. 16, 2013) (rejecting challenge to consultative exam's compliance with minimum scheduling intervals where issue was not raised before ALJ); *Carvey v. Astrue*, No. 06-CV-737, 2009 WL 3199215 at *14 (N.D.N.Y. Sept. 30, 2009) ("failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal").

However, even if the court were to excuse the delay in raising this issue, plaintiff's contention lacks merit. Plaintiff's argument is entirely based upon his own

recollection (as related to plaintiff's representative during the administrative process) that Dr. Mahony's exam "[f]elt like about a 10 minute appt."[7] (T. 265). Plaintiff fails to cite any evidence in the record to substantiate this claim.

Dr. Mahony's report contained all of the required elements for a consultative exam in accordance with the Social Security regulations. (T.371-374). The report identified plaintiff's chief complaint; provided a detailed description of plaintiff's medical history relative to the complaint; described pertinent "positive" and "negative" detailed findings based on plaintiff's history, examination and related tests; provided the results of the attention and memory tests performed during the exam; gave a diagnosis and prognosis for plaintiff's impairments; described plaintiff's current abilities; and offered the physician's comments on plaintiff's condition. 20 C.F.R. § 404.1519n(c)(1)-(6). Since there is no evidence that shows otherwise, and Dr. Mahony submitted all the required information in his report, this Court concludes that his examination of plaintiff was legally sufficient. *Amberg v. Astrue*, No. 08-CV-967 (LEK), 2010 WL 2595218, at *5 (N.D.N.Y. May 24, 2010) (rejecting plaintiff's allegation that exam was insufficient length when consultative report contained all necessary elements).

Plaintiff also challenges the weight assigned to Dr. Mangold's report, asserting that the state agency psychologist did not have all of plaintiff's medical records when he issued his report, and never examined plaintiff. (Pl's Br. at 25-26). This court

---

[7] 40 C.F.R. § 404.1519n(a) provides that the minimum scheduling intervals are "time set aside for the individual, not the actual duration of the consultative examination."

rejects both arguments. In evaluating Dr. Mangold's opinion, the ALJ noted that Dr. Mangold requested certain records but did not receive them.[8] (T. 18, 387). The ALJ decided that Dr. Mangold's opinion was still entitled to "significant weight" because it was consistent with plaintiff's testimony, the available medical evidence, plaintiff's work history, and test results.[9] (T. 22). Unlike *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996), cited by plaintiff, where a non-examining physician's report was the sole evidence relied upon by an ALJ, in this case the ALJ gave significant weight to Dr. Mangold's report precisely because it was consistent with the other medical opinion evidence, including that of Dr. Mahony, Dr. Lopez-Williams (who administered plaintiff's IQ tests), Nurse Practitioner Chambrone, and counselor McNary. (T. 24).

Plaintiff has not identified any deficiencies in Dr. Mahoney's or Dr. Mangold's conclusions beyond their inconsistency with the Talerico/Saville opinion. Therefore, this court concludes that the ALJ's determination was based upon substantial evidence and recommends that plaintiff's challenge to the ALJ's RFC assessment be dismissed.

---

[8] The ALJ specifically noted that records were not received from Mental Health Connections, which would have included notes by Talerico and Saville. Since Dr. Mangold's review occurred in March 2012 and the first progress report by Talerico is dated April 6, 2012, there were likely few records responsive to this request.

[9] Plaintiff alleges that the ALJ inappropriately put "great stock" in plaintiff's GAF test scores. While the ALJ cites plaintiff's test results in the context of other medical evidence, such consideration is appropriate, and there is no indication that the ALJ gave them undue weight.

## VII. New Evidence Submitted to Appeals Council

### A. Legal Standards

#### 1. New and Material Evidence

The regulations provide that the Appeals Council considers new and material evidence if it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.976(b)(1). *See Jenkins v. Colvin*, No. 1:13-CV-1035, 2015 WL 729691, at *5 (N.D.N.Y. Feb. 19, 2015) (citation omitted). If the Appeals Council finds that the evidence is new and material, it will review the case if it finds that the ALJ's decision is contrary to the weight of the current record evidence. *Id.* (citing 20 C.F.R. § 404.970 (b). Even if the Appeals Council finds that the evidence is not new and material and declines to review the ALJ's decision, the evidence in question becomes part of the record for review by the court. *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). If the Appeals Council denies review after reviewing the new evidence, the Commissioner's decision includes the Appeals Council's conclusion that the ALJ's findings remain correct despite the new evidence. *Id.*

#### 2. Treating Physician Rule

As defined in the regulations, a "treating source" is a patient's own physician, psychologist, or other acceptable medical source who provides or has provided a patient with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902. An ongoing treatment relationship is established by medical evidence showing that a patient has seen the source with a frequency consistent with accepted medical practice. *Id.*

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that a report of a treating physician is rejected. *Id.*

The treating physician rule applies to the Appeals Council. *See, e.g., Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (the Appeals Council has an obligation to explain the weight it gave to the opinions of the plaintiff's treating doctors); *Barnwell v. Colvin*, No. 13 Civ. 3683, 2014 WL 4678259 at *15 (S.D.N.Y. Sept. 19, 2014) (when considering additional evidence from treating sources, the Appeals Council was required to comply with regulations applicable to the assessment of opinions from treating sources.); *Knepple–Hodyno v. Astrue*, No. 11–CV–443, 2012 WL 3930442 at *9 (E.D.N.Y. Sept. 10, 2012) ("When new materials are submitted from treating physicians, the Appeals Council is 'obligated to provide an explanation for [its] decision not to afford controlling weight to an assessment apparently provided by Plaintiff's treating physician.'"); *Longbardi v. Astrue*, No. 07 Civ 5952, 2009 WL 50140 at *25 (S.D.N.Y. Jan.7, 2009) ("Failure to provide explicit 'good reasons' for not crediting a treating source's opinion is a ground for remand.") (citing *Snell*, 177 F.3d at 133).

## B.    Application

After the ALJ rendered his decision on December 28, 2012, plaintiff submitted additional material to the Appeals Council for consideration. (T. 261). This submission included the Medical Source Statement prepared by Talerico/Saville and previously considered by the ALJ, but with the addition of the signature of Dr. Vidya Patil, dated January 20, 2013. (T. 444). Dr. Patil is the supervising, board-certified psychiatrist at Mental Health Connections, the facility where both Talerico and Saville work. (Pl's Br. at 30). In the accompanying brief to the Appeals Council dated February 18, 2013, plaintiff's representative described Dr. Patil as plaintiff's "treating and supervising doctor." (T. 261).

The Appeals Council considered the new evidence, including the Medical Source Statement, now signed by Dr. Patil, but concluded without discussion that "neither the contentions nor the additional evidence provide a basis for changing the Administrative Law Judge's decision." (T. 2). Plaintiff contends that the Medical Source Statement, which is identical to the one considered by the ALJ, is a "new" opinion by a treating psychiatrist which is relevant to the time period in question and probative of the issue of disability. (Pl.'s Br. at 30). Therefore, plaintiff argues, remand is required in order for the Commissioner to properly consider this new evidence. This court disagrees and recommends that the request for remand be denied.

Evidence is new when it is not duplicative, cumulative or repetitive, and it is material when it affects the ALJ's findings or conclusions and relates to the time period

21

on or before the date of the ALJ's decision. *Pike v. Barnhart*, No. 05-CV-1249, 2008 WL 4107172, at *8 (N.D.N.Y. Aug. 28, 2008). The Medical Source Statement, completed in November 2012, relates to the time period before the ALJ opinion, but it is identical to the report that the ALJ already considered and assigned little weight. (T. 22-24, 420-421, 443-444). The only difference is that it has been signed by Dr. Patil. (T. 444). Plaintiff argues that this signature is significant, because it means that the Medical Source Statement must be handled in accordance with the treating physician rule. (Pl.'s Br. at 30). "When a treating physician signs a report prepared by a nurse practitioner . . . the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views." *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272 (GLS/ESH), 2014 WL 5823104, at *4 & n.10 (N.D.N.Y. Nov. 7, 2014) (collecting cases).

This court concludes that application of the treating physician rule would be inappropriate, and that the Appeals Council's consideration of the additional evidence was proper. The record evidence compels the conclusion that Dr. Patil is not the plaintiff's treating physician. *See Snell*, 177 F.3d at 133 (treating physician rule did not apply to doctor who wrote letter to Appeals Council on behalf of plaintiff, where record did not show any direct treatment history with plaintiff). The fact that Dr. Patil is the supervising psychiatrist at the facility where plaintiff received treatment does not, on its own, mandate application of the treating physician rule. *Courtney*, No. 06:12-CV-1157; 2013 WL 5218455 at *2. The rationale for giving the opinion of a treating physician extra weight is based upon the unique position "resulting from the continuity

of treatment he provides and the doctor/patient relationship he develops [that] place him in a unique position to make a complete and accurate diagnosis of his patient." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (quoting *Mongeur*, 722 F.2d at 1039).

The record contains no evidence of a doctor-patient relationship between plaintiff and Dr. Patil. For example, Dr. Patil's name does not appear in any of plaintiff's treatment notes or medical records from Mental Health Connections despite receiving treatment there between February 2012 and January 2013. (T. 394-418). There is likewise no evidence that any of plaintiff's progress reports were provided to Dr. Patil. (*Id.*) A July 3, 2012 letter to an insurance company regarding plaintiff's condition is signed by Francis Voorhees, Primary Therapist, and Linda Talerico, Nurse Practitioner, with no indication that it was reviewed or endorsed by Dr. Patil. (T. 404). At the ALJ hearing and in his application for benefits, plaintiff identified Linda Talerico as the individual who prescribed his medication, and Donna Saville as his counselor. (T. 58-59, 252). When questioned during the hearing about plaintiff's treatment at Mental Health Connections, neither plaintiff or his representative mentioned Dr. Patil. (T. 58).

A physician who does not have an "ongoing treatment relationship" with a plaintiff does not qualify as a treating physician. *See Patterson v. Astrue*, No. 5:11-CV-1143 (MAD/DEP), 2013 WL 638617, *8 (N.D.N.Y. 2013); 20 C.F.R. §§ 404.1502, 416.902. Given the lack of any evidence of a treating relationship with Dr. Patil, this court finds that the Appeals Council's consideration of the plaintiff's additional evidence was adequate. *Heath v. Colvin,* No. 5:14-CV-223, 2015 WL

1959710, *8 (N.D.N.Y. April 29, 2015) (treating physician rule inapplicable where plaintiff had never met doctor who co-signed Medical Source Statement).

This case, in which the alleged treating physician merely signed a Medical Source Statement already considered by the ALJ, is clearly distinguishable from the cases which have been remanded for the Appeals Council's failure to apply the treating physician rule. *See, e.g., Snell,* 177 F.3d at 133 (remanding where Appeals Council failed to explain its reasoning for rejecting opinions of physicians who had treated plaintiff on multiple occasions); *Djuzo*, 2014 WL 5823104, *4 (remanding where Appeals Council failed to properly evaluate new Medical Source Statement provided by plaintiff's long-standing treating physician); *Seifried v. Comm'r of Soc. Sec.*, No. 6:13-CV-347 (LEK/TWD), 2014 WL 4828191, at *6 (N.D.N.Y. Sept. 29, 2014) (remanding where Appeals Council failed to give reasons for rejecting new report by doctor already recognized by ALJ as treating physician). However, even if the treating physician rule were applicable, this court would still recommend that the request for remand be denied, because application of the correct legal standard would not change the outcome. *Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2009).

Where there is other substantial evidence in the record that conflicts with a treating physician's opinion, that opinion will not be afforded controlling weight, and "the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell,* 177 F.3d at 133. The ALJ evaluated the identical Medical Source Statement before it was signed by Dr. Patil, and concluded that its findings of extreme and marked limitations conflicted with all of the other medical evidence in the record,

including that from Mental Health Connections. As a result, the ALJ assigned it little weight. (T. 22-24). During this process, the ALJ applied factors similar to those relating to the treating physician rule: the length of plaintiff's treatment relationship and the frequency of examinations; the nature and extent of the treating relationship; the medical evidence in support of the opinion; the consistency of the opinion with the record as a whole; whether the opinion is from a specialist; and other factors that tend to support or contradict the opinion. (*Id.*). After making this evaluation of the Medical Source Statement, the ALJ gave significant weight to other medical opinions, which found only moderate and mild limitations. (T. 24). Beyond the imprimatur of a physician's signature, plaintiff has offered no evidence that would cast doubt upon the outcome of further administrative proceedings. Because application of the treating physician rule would inevitably lead to the same conclusion by the ALJ and the Appeals Council, there is no need to require agency reconsideration. *Havas v. Bowen*, 804 F.2d 783, 787 (2d Cir. 1986).

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the Commissioner's decision be **AFFIRMED**, and the plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: June 3, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge